# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00075-CR

**Darrell J. Harper, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. D-1-DC-11-904087, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Darrell J. Harper appeals from judgments convicting him of the offenses of retaliation and terroristic threat. *See* Tex. Penal Code §§ 22.07(a)(6), 36.06. The jury found appellant guilty of both offenses, and the trial court assessed sentences of six years' confinement to run concurrently. In two points of error, appellant challenges the legal sufficiency of the evidence to support the jury's verdict. Because we conclude that the evidence was legally sufficient, we affirm the judgments of conviction.

## BACKGROUND

Beginning in November 2009, appellant filed multiple claims for unemployment benefits with the Texas Workforce Commission (TWC). Among his claims, he sought unemployment benefits after he was fired from his job in January 2010 for sending a letter that his employer considered threatening. After TWC's initial adjudications denying his claims, appellant

appealed to TWC's appeals division, and a hearing was held on each claim before a TWC hearing officer. In each of the appeals, the hearing officer affirmed the initial adjudication denying appellant's claim. Appellant then appealed each of those decisions to the commission, which also denied his appeals and requests for rehearing.

During the time that appellant's appeals were pending with TWC, appellant wrote and sent several letters to TWC. In a letter to TWC dated May 10, 2010, appellant questioned TWC's reasons for its decisions, raising fraud, racism, "false reports," and "illegally withholding" unemployment benefits from appellant. He listed payments that he was unable to make because of TWC's denial of benefits and, a few paragraphs later, stated:

> Claimant would hate to have to result [sic] to knocking some elderly person, whom [sic] may be related to board members, are [sic] board members may or may not know, in the head for their money on account of [TWC] accepts lies over truth, if provoked claimant may have to do so with an horrific outcome, and blame the entire ordeal on the [TWC], for theft of unemployment benefits and how racial profiling is acceptable in the workplace etc., in the State of Texas.

Appellant sent another letter to TWC dated June 1, 2010. In the letter, appellant asserted misconduct, fraud, racial profiling, and an "illegal act of corruption" by TWC employees. He listed one of his hearing officers by name and concluded in the final paragraph of the letter:

> [TWC] cannot continue to mistreat people any way they so desire without an act of retaliations [sic] occurring. [TWC] has treated claimant as if he does not belong in the same city, state, or country with you all.

In the subject line of the letter, appellant wrote: "<u>PREPARATION</u>."

Appellant sent another letter to TWC by facsimile on June 22, 2010. Appellant stated that he was appealing the hearing officer's decision as to another one of his claims. Appellant also stated:

> Since Respondent, [TWC], and Texas at will law has violated [Claimant's] Constitutional Rights in more ways than one. The very next time the Texas at will law violates [Claimant's] Constitutional Rights without claimant's permission [sic]. Claimant will enter State Capital [sic] where [TWC] resides, and shoot everyone "ass". Claimant would not care if he had to follow employers [sic] working at location too and from their homes [sic]. Claimant would not care if he "shot up" [TWC] location in and around State of Texas. Claimant refuses to be treated as a doormat. This also includes any Unconstitutional Denial of Any Pending Appeals.
>
> . . . .
>
> Claimant . . . encourage[s] Respondent, [TWC] to call claimant's bluff so claimant can make Respondent, [TWC] famous for provoking multiple acts of violent [sic] were performed where many innocence [sic] victims and their families be allowed to bring negligence lawsuits against the State of Texas at will, when the facts are on claimant's side [sic].

A TWC attorney reviewed this letter and referred the matter to the Texas Department of Public Safety.

Appellant eventually was indicted, he pleaded not guilty, and the matter proceeded to a jury trial in November 2011. The State's witnesses included employees from appellant's former place of employment, TWC hearing officers who conducted the hearings on his appeals, and the attorney who reviewed the letter dated June 22, 2010. She testified that, after she reviewed the letter, she referred the matter to the Texas Department of Public Safety because of safety concerns. The exhibits included appellant's letters, TWC records for each appeal, and CDs of the hearings before the TWC hearing officers. Appellant did not testify and did not call any witnesses. His

3

defensive theory at trial was that he sent letters to TWC to try to get TWC's attention to properly consider his claims.

The jury returned a verdict of guilty for the offenses of retaliation and terroristic threat. After a sentencing hearing, the trial court assessed sentences of six years' confinement to run concurrently. This appeal followed.

## STANDARD OF REVIEW

Appellant's points of error challenge the legal sufficiency of the evidence to support the jury's verdict. When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex. Crim. App. 2007).

**DISCUSSION**

*Retaliation*

In his first point of error, appellant contends that the evidence was legally insufficient to support the jury's guilty verdict for the offense of retaliation. Appellant argues that the evidence shows only that he threatened "[TWC] generally, not the individuals employed therein and not for the purpose of retaliating against the agency for conducting its statutory functions, but instead for the purpose of complaining about his former employer's racially motivated mistreatment of him as an employee." He urges that his focus was on his former employer.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge for the case. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The record shows that the actual charge was consistent with the hypothetically correct jury charge for the case. *See id*.; *see also Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik* and describing hypothetically correct jury charge). Tracking the relevant statutory language for the offense of retaliation, the jury was instructed: "A person commits the offense of retaliation if he intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant." *See* Tex. Penal Code § 36.06(a)(1)(A). The jury also was instructed that a "public servant" includes an "officer, employee, or agent of government," *see id*. § 1.07(41) (defining "public servant"), and the application paragraph in the charge was consistent with the language from the indictment. *See*

5

*Malik*, 953 S.W.2d at 240. We review the sufficiency of the evidence then by the elements of the offense of retaliation as defined in the charge.

The evidence at trial included testimony from TWC employees about appellant's actions during the time period that his appeals were pending before TWC, and the exhibits included appellant's letters, TWC's records for his appeals, and the CDs from the hearings conducted by the TWC hearing officers in which appellant testified and represented himself. The evidence showed that appellant's letters were sent to TWC during the time period his appeals were pending. In the letters, appellant used words such as "an horrific outcome," "multiple acts of violent," and "act of retaliations." [sic] In the letter dated June 22, 2010, appellant challenged the denial of his unemployment benefits and stated that the "very next time" his rights were violated that he would enter TWC's premises at its location on the Capitol grounds and "shoot everyone 'ass.'" Given the content and timing of the letters in the context of the pending appeals at TWC, a rational jury could have inferred that appellant intended to threaten to harm TWC employees because of their public service. *See In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.) ("Retaliatory intent may be inferred from an accused's acts, words, or conduct." (citing *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982))).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed the offense of retaliation. *See Jackson*, 443 U.S. at 319. Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict as to that offense and overrule appellant's first point of error.

6

*Terroristic Threat*

In his second point of error, appellant contends that the evidence was legally insufficient to support the jury's guilty verdict for the offense of terroristic threat. Appellant urges that the evidence at trial "was distinctly different from the allegations in the indictment." The indictment alleged that appellant "did then and there threaten to commit an offense involving violence to persons, to wit: shoot employees of the [TWC] and persons present inside the Texas Capitol Building and persons present inside any building in which a division of the [TWC] is located, with intent to influence the conduct or activities of a branch or agency of the government of the State of Texas, to wit, the [TWC]." Appellant urges that "shooting everyone's ass could just as easily refer to their animals," threats against property were not alleged in the indictment, and there was no evidence to support an inference that his comments were intended to influence the conduct or activities of a branch or agency of the government. Appellant also urges that his comments were not directed against any person but against a governmental agency generally.

As previously stated, we measure the sufficiency of the evidence by a hypothetically correct jury charge for the case. *See Cada*, 334 S.W.3d at 773. The record shows that the actual jury charge was consistent with the hypothetically correct jury charge for the case. Tracking the applicable statutory language, the jury was instructed: "A person commits the offense of terroristic threat if he threatens to commit any offense involving violence to any person or property with intent to influence the conduct or activities of a branch or agency of the federal government, the state, or a political subdivision of the state." *See* Tex. Penal Code § 22.07(a)(6). The application paragraph in the charge also was consistent with the language from the indictment. *See Malik*, 953 S.W.2d

7

at 240 (noting that hypothetically correct jury charge must be "authorized by the indictment"); *see also Byrd*, 336 S.W.3d at 246; *Gollihar v. State*, 46 S.W.3d 243, 254–55 (Tex. Crim. App. 2001). The application paragraph confined the threat "to commit an offense" to an "offense involving violence to persons." In this context, we turn to our review of the sufficiency of the evidence measured against the charge.

In his letter dated June 1, 2010, appellant referenced one of his pending appeals, listed "<u>PREPARATION</u>" in the subject line of the letter, and threatened an "act of retaliations" if the TWC "continue[d] to mistreat people." In his letter dated June 22, 2010, appellant referenced a different appeal, threatened to "shoot everyone 'ass'" at TWC's location on the Capitol grounds "the very next time" his rights were violated, stated he "would not care if he had to follow employers working at location too and from their homes" [sic] and, a few sentences later, stated that he "refuses to be treated like a doormat" and that "[t]his also includes any Unconstitutional Denial of Any Pending Appeals." Given the timing and the content of the letters in the context of his pending appeals before TWC, the jury could have inferred that appellant's threats were directed at TWC employees—not just property or at animals—and that his threats to "commit an offense involving violence to persons" were intended to influence the conduct or activities of TWC, namely its pending rulings on his appeals.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant committed the offense of terroristic threat. *See Jackson*, 443 U.S. at 319. We overrule appellant's second point of error.

8

## CONCLUSION

For these reasons, we affirm the judgments of conviction.


_____
Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   April 30, 2014

Do Not Publish